# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JEFFREY B. SCHOELLER,

      Plaintiff,

vs.                                                  Civil No. 00-840 JP/WWD

LARRY G. MASSANARI, Acting
Commissioner of Social Security,[1]

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon Plaintiff's Motion to Reverse and Remand for a Rehearing, filed November 1, 2000 **[docket # 9]**.[2]  The Commissioner denied Plaintiff's request for social security disability insurance benefits.  Plaintiff was 33 years old at the time of the administrative hearing.  He alleges a disability which commenced November 8, 1995, due to back problems stemming from a motor vehicle accident on that date.  Mr. Schoeller worked in the past as a construction worker.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied the application, concluding that Plaintiff has a residual functional capacity ("RFC") for light work with no repeated bending, and no more than occasional stooping,

---

[1] President Bush designated Larry G. Massanari as Acting Commissioner of Social Security,  effective March 29, 2001**.**  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Larry G. Massanari should be substituted for Kenneth S. Apfel as the defendant in this suit.   No further action need be taken to continue this suit by reason of the last sentence of § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] The motion package was actually filed with the Court on February 7, 2001.

kneeling, crouching, and crawling.  The Appeals Council declined to review Mr.Schoeller's request for review of the ALJ's decision, thus rendering the ALJ's decision the final decision of the Commissioner.  Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

    3.   The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id. (citation omitted).

    4.   As a basis for error, Plaintiff contends that the ALJ: (1) erred in his RFC finding; (2) erred in his credibility finding; and (3) failed to develop the record regarding mental impairment.

    5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

    6.  At the fifth step of the sequential evaluation process, the burden shifts to the Commissioner to produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).   The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.

The grids aid the Commissioner in determining what specific job types in the national economy the claimant can perform, and assume that the grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

    7.  Plaintiff suffers from a herniated lumbar disc, sustained following a car accident in which he was a passenger.  He was on his way back home from Durango, Colorado when the car swerved in an unsuccessful attempt to avoid hitting a deer that had come out onto the road.  The car spun around and went off an embankment.  According to Plaintiff, some of his teeth were knocked out when he was thrown out of his shoulder harness, and he had a minor concussion. Tr. at 41-42.

    8.  Mr. Schoeller stated that he can no longer build houses or furniture like he used to. Tr. at 47-49.  He maintains the family vehicles, keeps house and cares for his two small children while his wife works, although his wife cleans out the tub since it involves bending which is difficult for him.  Tr. at 54-55.  Mr. Schoeller told the ALJ that he would like to go back to college but that he couldn't afford it.  Tr. at 44.

    9.  Plaintiff can walk, but finds it uncomfortable to jog or run; can sit but needs to change positions frequently.  Tr. at 51.  He can sit in a car when traveling for about 45 minutes before he needs to move around and stretch a bit.  Tr. at 62.  He said that he has difficulty picking up his two year-old daughter who weighs 20 to 24 pounds, but feels that he can lift at most 20 pounds, maybe 20 to 25 pounds, although at that level it "triggers problems."  Tr. at 53-54.  He spends some of the day watching television, and goes to church occasionally.  Tr. at 56.  Mr. Schoeller said that he is able to go fishing, although he has not gone in a while, but that he does go to

movies and to the mall with his two-year old daughter about once a week to walk around and keep "limber." Tr. at 56.

10. Plaintiff told the ALJ that his back pain is moderately severe, depending on the day and that the weather affects the pain. Tr. at 57. He has some bad days where his wife has to help him get dressed and get into and out of the bed. Tr. at 54. Mr. Schoeller describes the pain as an "unbearable stabbing" pain starting in the lower back, and progressing up through the thoracic region, and often causing spasms in both legs. Tr. at 60-61.

11. Plaintiff stated that in the past he has had to take "a lot of medicine." Tr. at 58. He said that the medications do not always work, but that they make him more comfortable. Tr. at 61. The medications cause him to feel dizzy or nauseous, or "dopey and slow." Tr. at 61-62.

12. Plaintiff said that his back problem makes him feel depressed in that he's not able to do things he used to be able to do and that he feels useless. Tr. at 62-63.

13. At the hearing, the ALJ sought the opinion of a vocational expert ("VE"), who had listened to all the testimony. The VE inquired into the past demands of Plaintiff's various work activities, including but not limited to doing house construction, working as a printer, and as a free-lance auto mechanic. Tr. at 78-81, 82-83.

14. The ALJ's hypothetical to the VE included Plaintiff's limitation to the functional requirements of light work and assumed that Mr. Schoeller could sit, stand and walk six out of eight hours a day, but that he was limited in stooping, bending, kneeling, crouching or crawling. Tr. at 88.

15. The VE opined that Plaintiff could do off-set printing with these limitations, but that the job would be precluded if Plaintiff could not do any stooping or bending. However, he would

be able to perform jobs such as a job order clerk and customer service clerk, of which there existed a significant number of jobs both nationally and regionally. Tr. at 89. The VE stated that these jobs would be precluded if Plaintiff found it necessary to go home because of the pain at least two or three times a month. Tr. at 90, 92.

**First Alleged Error**

16. Plaintiff contends that the ALJ erred in his RFC finding, basing this contention on the various medical reports that allegedly show an inability to perform light work. The ALJ stated that Plaintiff's ability to "stand, walk, and sit is not limited and he can stand, walk, and sit for up to six hours of an eight hour work day." Tr. at 21.

17. The medical reports by both treating physicians and consulting physicians support the ALJ's determination that Mr. Schoeller has the lifting ability required for light work. Tr. at 214, 180 (10 to 20 pounds).[3] Dr. Gelinas stated that Plaintiff's impairment should not limit his daily activities and that he should limit frequent bending, lifting and stooping. Tr. at 180. Dr. Gold, a neurologist, opined that Mr. Schoeller's back problem "should not interfere with most activities except those which require heavy lifting, i.e., small home construction is probably out." Tr. at 183.

18. Dr. Jones, a state agency physician, noted that MRI studies done in January 1996 and February 1997 both substantiated a left-sided herniated disc at L5-S1, but nevertheless concluded that light work was a good endeavor for Plaintiff. Tr. at 186. Dr. Jones also opined that Plaintiff

---

[3] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved. SSR 83-10; 20 C.F.R. § 404.1567(b), 416.967(a) (1986). Thus, the ability to lift twenty pounds is an "occasional" rather than "frequent" requirement, and is consistent with the medical findings.

could do medium exertional work with frequent lifting up to 20 pounds and occasional lifting up to 40 pounds, but that he should avoid frequent bending and twisting of the back. Tr. at 186. He also found that Plaintiff could sit, stand and walk for 6 hours of an 8-hour day. Tr. at 190.

19. Plaintiff's back pain persisted, even by the time he reached maximum medical improvement in August 1997. Tr. at 203 ("The patient is having persistent low back pain"); Tr. at 176, 180 ("His main problem remains pain in his low back"); Tr. at 223 ("The aggravation of his back pain persists"). These symptoms did show signs of considerable improvement by mid to late 1997, according to records of his treating physicians, Dr. Neidhart and Dr. Ottenstein. Tr. at 210-214, 283, 287-291. Plaintiff was able to report some pain-free periods. Tr. at 217.

20. Plaintiff points out that his attempts to do light work since the accident were not entirely successful and therefore the ALJ was incorrect in finding that he could perform that category of work. For example, Dr. Neidhart, Plaintiff's treating physician, stated that Plaintiff "has been trying to do some light work with variable success." Tr. at 223. However, the ALJ allowed for Plaintiff's nonexertional impairment of pain and correctly consulted a VE instead of relying on the grids. Tr. at 22 ("Strict application of [the grids] is not possible. . . as the claimant had non-exertional limitations which narrowed the range of work he was capable of performing. . . .").

21. Nevertheless, I agree with Plaintiff that the medical reports and RFC assessment completed by the state agency physician are insufficient to support the ALJ's finding that Plaintiff's ability to sit, stand and walk are not limited under the regulations for light work, based on Plaintiff's stated need for frequent postural changes.

22. The regulations describing light work are not specific regarding how long a period

of time a claimant must be able to sit or stand, except that this category of work "involves good deal of walking and standing."  20 CFR § 416.968.

23. The RFC completed by the state agency physician, indicated that Mr. Schoeller had no postural limitations.  See ¶ 18, above.  Assessments done by state agency physicians can be given weight when they are supported by evidence in the case record and when the opinion is consistent with the record as a whole, including other medical opinions.  SSR 96-6p ("Policy Interpretation").   In this case, the record mentions a need for Plaintiff to change positions frequently, in Plaintiff's reports to physicians and at the hearing.  Tr. at 177, 227, 223, 249.  These limitations should have been included in a hypothetical to the VE.  See Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993) (where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a determination).

24. The case should be remanded to determine through a VE consult, whether Plaintiff's need to change positions frequently further erodes the vocational base.

**Second Alleged Error**

25. Plaintiff alleges that the ALJ erred in his credibility finding.  The ALJ found that Plaintiff's "symptomatology is not nearly as severe as alleged and would not preclude all work related activities."  Tr. at 20.  The ALJ further found that Plaintiff's statements concerning his impairment and its impact on his ability to work were not "entirely credible" in that they were not consistent with the medical evidence in the record.  Id.

26. A claimant's subjective complaint of pain is by itself insufficient to establish disability."  Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir.1990).  Several factors are relevant in determining the credence given to a claimant's statements of disabling pain, including the levels of

medication taken and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence. Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir.1988).

27. Plaintiff's daily activities and the medical evidence supports the ALJ's credibility findings as to Mr. Schoeller's complaints of disabling pain. Daily activities may be considered in discounting a claimant's subjective complaints. Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988); Talbot v. Heckler, 814 F.2d 1456, 1462 (10th Cir. 1987).

28. Disability requires more than mere inability to work without pain. To be disabling, "pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment." Gossett v. Bowen, 862 F.2d 802, 807 (10th Cir. 1988).

29. In this case, Plaintiff regularly cares for his two year-old daughter and a new baby while his wife works. Although he has to be careful that he doesn't bend or twist while he's caring for them, e.g., changing their diapers, or lifting them, he is able to take care of the two very small children as well as to do some housekeeping on a daily basis. See Tr. at 54-55, 65-66. Plaintiff told the ALJ that he had thought about becoming a shop teacher, or finishing college. Tr. at 44, 92. He also stated that he was unable to finish college because of financial reasons. Tr. at 44.

30. The ALJ did consider the medical reports in his credibility analysis. Tr. at 20. Because the ALJ had discussed the medical evidence in more detail earlier in the opinion, there

was no need to reiterate the medical findings specific to credibility. The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. See Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (citation omitted). The medical evidence shows that Plaintiff does experience back pain. However, as indicated above, reports from treating physicians indicate that Plaintiff's symptoms were improving over time.

31. I note that the ALJ mentioned Plaintiff's complaints pertaining to side effects of the medication he took. Tr. at 20 ("his medication . . . sometimes makes him feel dizzy or slow"). It is not clear how the ALJ factored this into his credibility inquiry. He did not include Plaintiff's side effects in any of the hypotheticals posed to the VE.

32. There is no evidence to show that Plaintiff was not truthful about his complaints regarding side effects, particularly where they were supported not only by his testimony, Tr. at 62, 73, but also by his complaints to a neurosurgeon to whom he was referred to by his treating doctor, Dr. Neidhart. Tr. at 246.

33. Thus, on remand, the ALJ should address Plaintiff's side effects as a nonexertional impairment and consider them within a credibility analysis, considering the frequency and severity with which Plaintiff experiences these side effects. If this factor survives a credibility analysis, then the ALJ should, in addition to postural limitations, include Plaintiff's side effects in a hypothetical to the VE to determine whether they have an effect on jobs Plaintiff can otherwise perform. See, e.g., Mitchell v. Sullivan, 925 F.2d 247 (8th Cir.1991) (claimant's testimony that he took medication four times per day and that he occasionally suffered side effects from medication should have been accepted as true by ALJ and should have been included in hypothetical question posed to the VE with respect to availability of jobs which claimant could

perform, where no evidence fairly denied the truth of claimant's testimony).

**Third Alleged Error**

34.  Plaintiff alleges that the ALJ failed to develop the record regarding mental impairment, viz., depression.  Plaintiff bases this contention on comments made by both Dr. Gelinas and Dr. Gold in their medical reports and argues that the ALJ should have developed the record more thoroughly on this issue by ordering a consult to ascertain whether anxiety and depression interfered with Plaintiff's ability to work.

35.  The ALJ has considerable discretion to obtain additional evidence that may already exist or to procure additional consultative examinations to resolve conflicts in existing record evidence.  See Hawkins v. Chater, 113 F.3d 1162, 1166-67 & n. 5 (10th Cir.1997).

36.  Dr. Gelinas stated that Mr. Schoeller reported that he gets tension headaches and gets "quite anxious" up to four times a week.  Tr. at 177.  Dr. Gold noted that Plaintiff was nervous and depressed, Tr. at 182, but he added that Plaintiff "seems to be coping with his problems." Plaintiff reported feeling "frustrated with his functional limitations and persistent symptoms."  He was prescribed Prozac, which improved his mood.  Tr. at 214.  See Diaz v. Sec'y of Health & Human Servs., 898 F.2d 774, 778 (10th Cir.1990) (ALJ did not abuse his discretion in refusing to order a consultative mental examination in light of the evidence that claimant's mental problems are effectively treated with medication).

37.  Based on the above comments, I find that the ALJ did not abuse his discretion in considering whether to inquire further into Plaintiff's depression.  This impairment did not allegedly prevent Plaintiff from working, based on his own testimony or the other evidence in the record.  See 20 C.F.R. § 404.1520a; Andrade v. Sec'y of Health & Hum. Serv., 985 F.2d 1045,

1048-49 (10th Cir. 1993) (describing when special procedures must be completed for mental impairments).

38.   In fact, this third contention raised by Plaintiff is a curious one, because the record contains evidence that Plaintiff's mental state was triggered by his feeling that he could not work rather than the other way around, with his mental state possibly interfering with his ability to work.  See, e.g., Tr. at 62 ("it can get you depressed when you're not feeling good.  You're not able to do things. . . ."); cmp. Jones v Bowen, 829 F.2d 524, 256 (5th Cir. 1987) (citation omitted) ("Mere sensitivity about loss of ability to perform certain chores, however, does not even approach the level of a mental or emotional impairment as defined by SSA regulations").

39.   Thus, I find that the ALJ did not fail to develop the record regarding Plaintiff's mental impairment.

40.   In sum, I find that (1) the ALJ erred in his RFC finding in that consideration was not given to Plaintiff's need for frequent postural changes; (2) the ALJ erred in his credibility finding in that he failed to consider Plaintiff's side effects from medications; but as to the third issue, (3) the ALJ did not fail to develop the record regarding Plaintiff's mental impairment.

### Recommendation

I recommend that Plaintiff's Motion to Reverse and Remand for a Rehearing **[docket # 9]** be GRANTED IN PART and that this cause be remanded to the Commissioner for proceedings consistent with this opinion:  (1)  the case should be remanded to determine through a VE consult, whether Plaintiff's need to change positions frequently further erodes the vocational base; and (2) on remand, the ALJ should address Plaintiff's side effects from medications he is taking as a nonexertional impairment and consider them within a credibility analysis, considering the

frequency and severity with which Plaintiff experiences these side effects. If this factor survives a credibility analysis, then the ALJ should, in addition to postural limitations, include Plaintiff's side effects in a hypothetical to the VE to determine whether they have an effect on jobs Plaintiff can otherwise perform.

Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

_____
UNITED STATES MAGISTRATE JUDGE